IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| DAVID S. HOLDER and GRANGE MUTUAL CASUALTY COMPANY, | * * * | |
| Plaintiffs, | * * | CIVIL ACTION NO. CV 307-054 |
| vs. | * * | |
| STATE FARM FIRE & CASUALTY COMPANY, | * * * | |
| Defendant. | * | |

### O R D E R

In the captioned matter, Defendant has filed a motion for summary judgment with respect to Plaintiffs' claims arising out of an insurance coverage dispute. Upon consideration of the parties' briefs, the record evidence, and the relevant law, Defendant's motion for summary judgment is **GRANTED**.

### I. FACTUAL BACKGROUND[1]

In June or July 2004, Plaintiff David S. Holder

---

[1] At the outset, the Court notes that Plaintiff Holder has moved to strike the affidavit of David Shane Johnson executed on September 8, 2006. As will be addressed later, the motion is denied. Accordingly, the facts as averred in this affidavit are used herein and are admissible for purposes of Defendant's summary judgment motion. Concomitantly, the affidavit of David Shane Johnson executed on December 21, 2007, will not be considered because I have determined that it is a sham affidavit.

DHB (34)  CCC: _____

("Holder") purchased a twenty-three-foot 1991 Grady White "Cuddy Cabin" fishing boat equipped with twin 150 hp Yamaha engines. (Compl. ¶ 5; Holder Dep. at 53, 72.) At the time, Holder also owned a twenty-one-foot Chris Craft boat. (Holder Dep. at 52.) Both boats were kept and maintained at the Fernandina Beach Harbor Marina in Fernandina Beach, Florida. (Holder Aff. ¶ 1.) Holder obtained both property and liability insurance on the boats through Defendant State Farm Fire & Casualty Company ("State Farm"). This case arises out of an accident involving the Grady White that occurred on November 27, 2004.

Holder is a life-long resident of Dodge County, Georgia. (Holder Dep. at 14-15.) He owns vacation rental property on Amelia Island, Florida, near Fernandina Beach. (Id. at 15.) Four or five years prior to the purchase of the Grady White, Holder met David Shane Johnson ("Johnson") at the marina. The two became friends and frequently fished together. (Id. at 75-77; Johnson Aff. ¶¶ 3-4.) In time, Holder allowed Johnson, who lived at the marina, to use the Chris Craft at his leisure without having to seek permission from Holder. (Holder Dep. at 76 ("I left the boat pretty well for [Johnson] to do whatever he wanted to with it. . . . I just let him use it the way he wanted to.").)

At some point, Johnson obtained a charter license so that

he could take people fishing and charge a fee for his services. Holder testified that he knew Johnson had obtained the license and that Johnson planned to become a charter boat captain for a living. (Id. at 81.) Johnson attested that prior to the accident and over a period of two to three months, he had taken the Chris Craft on 10 charter excursions for pay. (Johnson Aff. ¶ 9.) He further attested that he had an arrangement with Holder whereby Holder would receive a portion of the charter fee. (Id. ¶¶ 7-8.)

Contrarily, Holder denied having received compensation for charter fishing trips from Johnson. (Holder Aff. ¶ 5.) When asked whether he knew about the charter excursions, Holder responded: "Not specifically." (Holder Dep. at 83.) He explained that he did not care what Johnson did with the Chris Craft. (Id. at 83-84.) Yet, Holder testified that he and Johnson had a conversation after Johnson obtained his charter license that Johnson would need to obtain charter insurance. (Id. at 80-81.)

On November 20 and 21, 2004, Mark Telford, a stranger to both Johnson and Holder, was interested in arranging a surprise fishing trip for his son, Ryan, who was visiting from California. (Telford Aff. ¶ 4.) He contacted many of the listed fishing charters in the Fernandina phone book. These calls were not fruitful except that one of the charter

3

captains he spoke with referred him to Johnson and gave him Johnson's telephone number. (Id.)

Telford left a message for Johnson, and on Monday, November 22, 2004, Johnson returned his call inquiring about the charter of a fishing boat. (Id. ¶ 5.) At that time, Johnson informed him that the cost of the trip would be $325.00 if they went offshore and $275.00 if they stayed inland. (Id.) Telford responded that he would contact Johnson when he had reached a final decision regarding the charter. (Id.)

The next day Telford called Johnson to book the charter. Johnson informed Telford that he would provide the fishing equipment and that Telford could pay "cash at the end of the trip." (Id. ¶ 6.) Johnson also told Telford that he would call on Friday, after checking weather conditions, to verify whether they would still go fishing the following day. (Id.)

As it so happens, Holder also planned to take his son, Christopher, fishing that same weekend on the Grady White. (Holder Dep. at 88-89.) That Friday Holder called Johnson when he arrived at Amelia Island. According to Holder, when they discussed Johnson's plans to take the Telfords fishing, Holder inquired whether Johnson had obtained charter insurance. (Id. at 86, 89.) Upon learning that Johnson had not, Holder claimed that he told Johnson that he could not

4

charter either one of the boats that Holder owned. (Id. at 86.) Holder then asked Johnson to take his son fishing the next day because he had a toothache and was unable to go. (Id. at 89.) Holder claimed he told Johnson the Telfords could go on the trip but not as a charter. (Id.; Holder Aff. ¶ 3.) Holder told Johnson to take the Grady White because it was larger than the Chris Craft. (Holder Aff. ¶ 3.)

Johnson attested as follows about these events. He stated that he told Holder about the charter arrangement earlier in the week. He stated that the night before, Holder called him and told him that his son would like to go along and suggested they take the Grady White. (Johnson Aff. ¶¶ 15-16.)

In any event, Johnson called Telford on Friday to confirm that the trip was to go on as planned. (Telford Aff. ¶ 7.) Johnson told him that they would be "using the bigger boat and a deck hand" so they would have the option to go offshore fishing if the weather permitted. (Id.) Johnson and the Telfords arranged to meet at the marina the following morning. (Id.)

On Saturday, November 27, Johnson captained the Grady White with Christopher Holder and the Telfords onboard. According to Telford, there was no question in his mind that the fishing trip was a charter. (Id. ¶ 10.) He had the cash

5

for the charter fee in his pocket and was going to give it to Johnson at the end of the trip. (Id.) Moreover, and most importantly, Johnson attested that at all times he "expected to be paid for [his] charter captain services" (Johnson Aff. ¶ 17) and that at all times "up to and including the accident" he considered the trip to be a "charter trip for hire" (id. ¶ 19).

During the trip, the boat struck a jetty and had to receive assistance from another boat to return them to the marina, at which time Telford was transported to the hospital by ambulance. (Telford Aff. ¶ 10.)

## II. PROCEDURAL BACKGROUND

In 2005, Plaintiff Holder filed suit in the Superior Court of Dodge County seeking to recover on his policy of insurance with State Farm for damages arising out of the boating accident. State Farm had denied coverage for the incident citing certain exclusions. In the property damage section of the State Farm policy at issue, the following exclusion appears:

> We do not insure for loss to the property . . . [for] damage occurring while your watercraft is:
>
> (1) rented to others;
> (2) used to carry property or people for a fee; or
> (3) used for any business pursuit.

(Compl., Ex. C, at 6-7.)  Coverage L and M of the policy provide for coverage for any liability to third parties and medical expenses respectively.  (Id. at 9.)  The policy, however, provides:

> Coverage L and M do not apply to bodily injury or property damage . . . while your watercraft is:
>
> (1) rented to others;
> (2) used to carry property or people for a fee; or
> (3) used for any business pursuit.

(Id. at 10.)

In this case, State Farm contends that the boat was taken out as a charter on the day of the accident, and thus the event falls within the aforementioned exclusions.  It is undisputed that the term "charter" is being used in this case to include taking people fishing for a fee.  (See Holder Dep. at 79.)

During the pendency of the first state court action, an affidavit of David Shane Johnson was executed on September 8, 2006.  Also, the deposition of Plaintiff Holder was taken on October 20, 2006.  Defendant State Farm filed a motion for summary judgment in the state case.  Prior to a ruling on the motion, Plaintiff Holder voluntarily dismissed the action without prejudice on February 8, 2007.

On July 19, 2007, Plaintiff Holder refiled his suit against State Farm, which State Farm removed to this Court on

August 22, 2007. A few days prior to the close of discovery, State Farm filed the present motion for summary judgment, attaching as supporting evidence the affidavits of Mark Telford (executed on January 22, 2008) and David Shane Johnson (executed on September 8, 2006) and the deposition of Plaintiff Holder taken on October 20, 2006.

In response, Plaintiff Holder filed a motion to strike the affidavit of David Shane Johnson. Additionally, he filed a second affidavit of Johnson (executed on December 21, 2007) and the affidavits of Plaintiff and his son, Christopher, both executed after the instant motion for summary judgment was filed.

Recently, this Court permitted the addition of Plaintiff Grange Mutual Casualty Company, which had become fully subrogated to one of Plaintiff's claims after it paid $137,500 to Mark Telford for the injuries he sustained during the accident.[2] (See Order of June 26, 2008.)

Both Plaintiff Holder's motion to strike the first affidavit of Johnson and Defendant's motion for summary judgment have been fully briefed and are ripe for consideration.

---

[2] Telford had filed a personal injury lawsuit against Holder in the Middle District of Florida, CV 306-977. Grange Mutual defended Holder in the suit under a home owner's policy and paid $137,500 in full settlement of Telford's claims.

8

### III. MOTION TO STRIKE

Holder has moved to strike the first affidavit of David Shane Johnson, dated September 8, 2006, arguing that he did not sign the affidavit in front of a notary public.[3] It is in this first affidavit that Johnson averred the boat was used as a charter on the day of the accident. (Johnson Aff., Sept. 8, 2006, attached to Def.'s Mot. for Summ. J., Ex. B.)

In support of his motion to strike, Holder submits a second affidavit of Johnson, dated December 21, 2007, wherein Johnson claimed that although the signature on the affidavit is his, he had "never met, seen or signed any document in the presence of the person identified as the notary." (Johnson Aff., Dec. 21, 2007, ¶ 4, attached to Pl. Holder's Resp. to Def.'s Mot. for Summ. J., Ex. C.) In this second affidavit, Johnson corroborated Holder's version of events, stating that Holder told him the night before that he could not charter either boat because of the lack of insurance. (Id. ¶¶ 6-9.)

In response to the motion to strike Johnson's first affidavit, State Farm submitted the affidavit of Anthony A. Rowell, State Farm's attorney, whose office is located in Tifton, Georgia. Rowell attested that he traveled to the marina in Fernandina Beach during the pendency of the first

---

[3] The affidavit bears the notary seal and signature of Jennifer M. Gallese of Florida, whose signature bears the same execution date as Johnson.

9

state case to interview Johnson. (Rowell Aff. ¶ 5.) While Johnson was in Rowell's presence, Rowell dictated an affidavit over the telephone to his office from his notes. (Id. ¶ 6.) Rowell received a faxed copy of the affidavit at the marina office.[4] Johnson made some minor changes, initialing the changes. (Id. ¶ 7.) Since there was not a notary public located at the marina, Rowell asked Johnson if he knew the location of a nearby bank. (Id. ¶ 8.) Upon Johnson's suggestion, he and Rowell traveled to a bank in Fernandina Beach, and Rowell waited inside the bank while a female witnessed and notarized Johnson's signature in her presence. (Id. ¶ 9.)

An affidavit is a sworn statement in writing made under oath or on affirmation before a notary public or other authorized officer. The affidavit must be based on personal knowledge, set forth such facts as would be admissible in evidence, and show that the affiant is competent to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(e); Fed. R. Evid. 902(8). In this case, Plaintiff Holder's only challenge to Johnson's first affidavit is that Johnson did not

---

[4] The affidavit contains the following fax transmission line at the top of every page: "Sep. 8. 2006 11:46AM HBSS." Mr. Rowell's law firm is "Hall, Booth, Smith & Slover, PC," presumably the "HBSS."

10

sign in front of a notary.[5]

The admissibility of evidence must be determined by the Court. Fed. R. Evid. 104(a). In considering the competing affidavits of Johnson and Rowell on the issue of whether the first affidavit was signed in front of a notary, I am convinced that Rowell's explanation of events is accurate. Accordingly, the first Johnson affidavit, executed on September 8, 2006, is admissible evidence in this case.

In further consideration of the Johnson affidavits, this Court has the discretion to strike an affidavit that contradicts, without explanation, previously given clear testimony. See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 658 (11th Cir. 1984). In this case, Plaintiff Holder has tried to create a question of fact respecting the charter issue by submitting the second affidavit of Johnson. While Johnson stated therein that the affidavit is meant "to clarify certain incomplete statements," there is nothing ambiguous, vague, or incomplete about his prior statement: "At all times up to and including the

---

[5] Of note, in the second affidavit, Johnson admits that he met with a representative of State Farm at the marina and reviewed the affidavit handed to him. He admits that he initialed changes to the affidavit. Most importantly, he admits that the signature which appears on the first affidavit is his. And, while he now claims no other person was present when he signed the document, he does not explain how it would have come back into the possession of Rowell or State Farm after he signed it.

accident I considered this [trip] to be a charter trip for hire." (See Johnson Aff., Sept. 8, 2006, ¶ 19.) Statements in the second affidavit to the effect that the trip was anything but a charter are inherently inconsistent with this prior statement. Accordingly, the second Johnson affidavit is a sham affidavit, unworthy of credence, and it will be disregarded for purposes of the instant motion for summary judgment.[6]

---

[6] The Eleventh Circuit has expressly declined to decide whether the Van T. Junkins rule extends to a disinterested witness's affidavit that is inconsistent with prior testimony. See Reese v. Herbert, 527 F.3d 1253 (11th Cir. 2008); Lane v. Celotex Corp., 782 F.2d 1526 (11th Cir. 1986). Other federal circuit courts have held that the general rule applies to a non-party's affidavit. Pourghoraishi v. Flying J., Inc., 449 F.3d 751 (7th Cir. 2006); Garnac Grain Co. v. Blackley, 932 F.2d 1563 (8th Cir. 1991); Adelman-Tremblay v. Jewel Cos., Inc., 859 F.2d 517 (7th Cir. 1988).

Here, Johnson is more than a disinterested witness to the matter. He has motive, whether emotional or financial, to stay in the good graces of Holder - a friend who allows him unlimited access to his boats which had become a source of income for Johnson. See Martin v. City of New York, 627 F. Supp. 892 (E.D.N.Y. 1985) (excluding the contradictory affidavit of the plaintiff's mother as a sham); Flight Training, Inc. v. Tropical, Inc., 2007 WL 5117263 (S.D. Fla. 2007) (striking the contradictory sworn statement of an interested witness). Moreover, as explained below, but for Johnson's second affidavit, Plaintiff Holder's claims must fail. Considering the timing of this affidavit, that is, that it has only now surfaced in response to State Farm's essentially *second* motion for summary judgment, and in view of the fact that the testimony therein flatly contradicts prior testimony on the central issue of the case, it is clear that the affidavit is an attempt to create a genuine issue of material fact where there is not one. The purpose of summary judgment would be subverted if this case were sent to a jury on the strength of Johnson's second affidavit. See Adelman-

Upon determining that Rowell's credible testimony supports the admission of the first Johnson affidavit and that the second Johnson affidavit is a sham, Plaintiff Holder's motion to strike the first affidavit of Johnson, executed on September 8, 2006, is **DENIED**.[7]

While the Court may consider sanctions for the submission of this false affidavit under the Federal Rules of Civil Procedure or its inherent authority to sanction abusive litigation practices, I have decided to report the matter to the United States Attorney's Office and the State Bar of Georgia for investigation.

---

Tremblay, 859 F.2d at 521 ("The purpose of summary judgment motions - 'to weed out unfounded claims, specious denials, and sham defenses' - is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony." (internal citation omitted)). Upon the foregoing, it is appropriate to extend the Van T. Junkins rule to the second Johnson affidavit.

[7] Holder also objected to Exhibit C, the records of the Florida Fish and Wildlife Conservation Commission, which is attached to State Farm's motion for summary judgment. Holder contends the records are not certified, verified or authenticated. (See Doc. No. 24.) Defendant subsequently submitted certified copies of the records. Accordingly, Holder's objection to Exhibit "C" is **OVERRULED**. Nevertheless, the Court did not consider the records in any way in resolving the motion for summary judgment or the motion to strike the Johnson affidavit.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-movant, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The movant has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, . . . no reasonable jury could find for the non-moving party." Four Parcels, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at

14

trial, the movant may carry the initial burden in one of two ways--by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If--and only if--the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. Anderson, 477 U.S. at 249. If the *non-movant* bears the burden

of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed. R. Civ. P. 56.

The Clerk has given the non-moving party of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 21.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), are satisfied.

B.  **Legal Analysis**

In this case, State Farm has refused to cover the accident of November 27, 2004, claiming that because the Grady White was used as a charter on that day, the aforementioned exclusions are applicable. Based upon these exclusions, State Farm contends that the denial of coverage was proper, and Plaintiffs' claims cannot succeed as a matter of law. The issue at present is whether there exists a genuine issue of material fact with respect to whether the Grady White was used as a charter on the day of the accident.

In support of its position that the Grady White was used as a charter, State Farm points to the testimony of Johnson and Telford, who both agree that they had a charter arrangement on that day. Plaintiff Holder does not dispute or argue that if the Grady White was used as a charter on that day, it would fall within the exclusions. Rather, he argues that if Johnson believed the fishing trip was not a charter, then a reasonable jury could find that the trip was not a charter regardless of what Telford thought. As evidence that Johnson decided, with or without the knowledge or input of Telford, that the fishing trip was free on the day of the accident, Plaintiff Holder points to his conversation with Johnson the night before in which he allegedly told Johnson that he could not use the Grady White for a charter trip. He

17

holds up Johnson's second affidavit as evidence of the conversation and of Johnson's intent in taking the trip.

The problem with Plaintiffs' case, however, is that this Court considers the second Johnson affidavit to be a sham. Indeed, the only admissible testimony of Johnson unequivocally shows that he considered the trip to be a charter. Hence, Plaintiffs are left with only Holder's self-serving testimony that he told Telford not to charter the boat the prior evening.

While it is a well-settled principle of law that a party may resist summary judgment by relying upon his own sworn testimony, so long as that testimony is based on personal knowledge,[8] Holder's testimony in this case is not relevant to the issue. That is, it is immaterial what Holder thought about the trip or even, taking his version of events as true, that he told Johnson not to charter the boat because the undisputed fact remains that Johnson chartered the Grady White on that day.

The case of <u>Atlanta Air Fleet, Inc. v. Insurance Co. of N. Am.</u>, 130 Ga. App. 15 (1973), is instructive. In that case, an airplane owner/insured brought suit against its insurance

---

[8] See <u>Price v. Time, Inc.</u>, 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").

company, which had denied coverage because the accident occurred while the plane was being flown by maintenance personnel who were not properly certified. The insured had left the plane with the maintenance personnel for repair work. The trial court denied a motion for summary judgment filed by the insured against the insurance company. Id. at 15. On appeal, the Georgia Court of Appeals affirmed the denial of summary judgment, concluding that it was immaterial that the airplane was being flown without the knowledge or consent of the insured. The court held:

> "The duty is on the insured to know that the aircraft is being operated within the regulations." The exclusion had an obvious relation to the degree of the risk or hazard assumed by the insurer, regardless of the insured's actual knowledge *or consent* as to the excluded use.

Id. at 15-16 (quoted source omitted) (emphasis added). In the case at bar, it is similarly immaterial that Holder did not know or consent to the use of the boat as a charter. The undisputed fact remains that the boat was used as a charter according to the person who arranged the trip and piloted the boat on the day of the accident. And, as in Atlanta Air Fleet, Inc., State Farm intended to exclude from coverage the use of the boat as a charter - a use that led to the loss in this case.

In short, there is no genuine issue of material fact that the Grady White was used as a charter on the day of the

accident and that the event therefore falls within the aforementioned exclusions to coverage. Thus, Plaintiffs' claims against State Farm fail as a matter of law.

## V. CONCLUSION

Upon the foregoing, Defendant's motion for summary judgment is **GRANTED**. The Clerk is directed to **CLOSE** this case and **ENTER JUDGMENT** in favor of Defendant. Costs are assessed against Plaintiff Holder.

**ORDER ENTERED** at Augusta, Georgia, this 21st day of August, 2008.

*[signature]*
UNITED STATES DISTRICT JUDGE